FIRST WISCONSIN NATIONAL BANK OF MILWAUKEE, and another, Respondents, v. WICHMAN, d/b/a First Wisconsin Home Company, Appellant.

Supreme Court

*No. 76–124. Argued September 5, 1978.—Decided October 3, 1978.*
(Also reported in 270 N.W.2d 168.)

For the appellant there were briefs by *Hamilton T. Hoyt* and *Hoyt, Greene & Meissner, S. C.* attorneys, and *Ronold P. Platner,* of counsel, all of Milwaukee, and oral argument by *Hamilton T. Hoyt.*

For the respondent there was a brief by *Robert A. Christensen* and *Foley & Lardner* of Milwaukee, and oral argument by *Robert A. Christensen.*

HEFFERNAN, J. This action was brought by the plaintiffs, First Wisconsin National Bank of Milwaukee and First Wisconsin Bankshares Corporation, to enjoin Gerald E. Wichman from using the words, "First Wisconsin," in the name of his home building company. The plaintiffs relied on the common law tort of infringement. Although defendant Wichman acknowledges that the

words, "First Wisconsin," have acquired a secondary meaning which associates them with plaintiffs' enterprises, he argues that, additionally, it must be proved that the alleged infringer acted with a fraudulent intent and also proved that the defendant was in competition with the plaintiffs. The plaintiffs contended at trial, and the trial court held, that fraudulent conduct and competition need not be proved, that it was sufficient where a nontechnical tradename had acquired a secondary meaning to show that its use by another created a likelihood of confusion of the source or sponsorship of the goods or services offered by the second user.

We conclude that the injunction was appropriate and affirm the judgment of the circuit court.

The defendant, Gerald E. Wichman, commenced doing business as a builder and seller of homes in the Milwaukee area under the name of "First Wisconsin Home Co.," in December of 1970. The name, "First Wisconsin Home Co.," was registered with the Secretary of State, pursuant to sec. 132.01, Stats., in November of 1970, as a tradename to be restricted to "home building and selling." Wichman built more than 100 homes from 1970 until December of 1975, the time of the trial. Although an earlier enterprise of his resulted in bankruptcy, he has established a good reputation for honesty and for reputable workmanship. There is no indication in the record that his present home-building enterprise is anything but solvent and financially reliable. The history of his business since 1970 has shown steady progress. Originally, Wichman built only federally subsidized low cost housing, but by 1975 he was successfully engaged in the construction and sale of higher priced homes in the $65,000 to $80,000 range. In 1973 and 1975 Wichman participated in the Parade of Homes under the name of "First Wisconsin Home Co."

The First Wisconsin National Bank of Milwaukee, one of the plaintiffs in the action, is by stipulation of the parties conceded to be the largest bank in Wisconsin and the best known bank in the Milwaukee area. The other plaintiff in the action, First Wisconsin Bankshares Corporation,[1] is a bank holding company which controls a number of banks, a trust company, and some nonbanking subsidiaries. All but one of these related corporations use the name, "First Wisconsin."

The name, "First Wisconsin National Bank of Milwaukee," was adopted in 1919 after the merger of the First National Bank of Milwaukee and the Wisconsin National Bank.

The bank first registered its tradename, "First Wisconsin," with the Secretary of State in 1967, with its registration restricted to banking. The holding company registered the name, "First Wisconsin," as a service mark with the United States Patent Office in 1969, with the proviso that it was for use in connection with "general banking services including credit card services . . . ."

The name, "First Wisconsin," has been in continuous use by the bank since 1919. Advertising emphasis was not given to that tradename until 1956, when the symbol, "wIs," was adopted and printed in connection with all the services offered by the bank and the holding company affiliates. The name, "First Wisconsin," rather than the full corporate name, has been emphasized since 1967, and extensive promotions have been undertaken in recent years to advertise the tradename, "First Wisconsin," in connection with all these related institutions. These efforts followed advice from a consulting firm that suggested "First Wisconsin" as a common signature for the corporate group. Since 1966 more than $1,000,000

---

[1] Since renamed "First Wisconsin Corporation."

per year has been spent to advertise the name, "First Wisconsin," as the corporate signature.

In November of 1970 the defendant Wichman opened two accounts at the First Wisconsin National Bank of Milwaukee, a checking account and a real estate trust account, both in the name of the First Wisconsin Home Company. In 1973, George F. Kasten, the chairman of the board of the First Wisconsin National Bank, saw an advertisement of the defendant company and, according to the testimony, first became aware of the defendant's use of the name, "First Wisconsin." Although the record does not make clear the circumstances, it appears that the advertisement was in connection with the Parade of Homes show in the spring of 1973. On July 5, 1973, the plaintiffs made a formal demand upon the Home Company to cease and desist using the name, "First Wisconsin." An action for injunction on the grounds of infringement of a tradename and unfair competition was commenced on October 12, 1973.

The circuit court following trial concluded that the defendant had infringed upon the plaintiffs' common law trademark, "First Wisconsin." It based that general conclusion upon findings that the name, "First Wisconsin," had been established by the plaintiffs as a nontechnical mark with a secondary meaning. The court also found that the defendant's use of the name created a likelihood of confusion in the minds of the public in respect to the relationship between the parties. Although the record indicated that there was little, if any, competition between the plaintiff bank corporation and the defendant home builder, the court held, as a matter of law, that there was no requirement of competition in a common law trademark infringement action where there was a likelihood of confusion.

The court also concluded, despite evidence showing that defendant had been using the name, "First Wisconsin,"

since 1970, that the plaintiffs were not barred by the equitable doctrine of laches, because the action was commenced promptly after a responsible bank officer saw Wichman's advertisement in connection with the Parade of Homes.

Judgment was entered enjoining the defendant from further use of the name, "First Wisconsin," but the defendant was permitted to note, for one year, on its stationery, telephone directory, and other writings, that it had formerly been known as the "First Wisconsin Home Company."

Although the plaintiffs registered their trademark under the provisions of both the federal and state statutes, no reliance is placed upon those registrations, because each of the registrations was limited to banking functions and defendant made no use of the name in connection with the banking business. The theory of the plaintiffs' case is based only upon the allegation of its common law rights to the exclusive use of the words, "First Wisconsin."

Common law rights in a trademark or tradename are created and preserved by use and not by registration. *Campbell Soup Co. v. Armour & Co.*, 175 F.2d 795, 797 (3d Cir. 1949). Common law trademark infringement is a branch of the law of unfair competition, and the principles used in both actions are substantially similar. *Campbell Soup, supra,* 796. As a part of a trademark infringement action, a plaintiff "must show either that his mark is a valid technical mark or that his nontechnical mark has acquired a secondary meaning." 3 Callmann, *Unfair Competition, Trademarks and Monopolies* (3d ed. 1969), sec. 66.1, p. 24.

Historically, legal writers took the position that trademarks had to be of a fanciful, arbitrary, or nondescriptive nature. Such trademarks were denominated as

"technical" and were protectible by an action for infringement. On the other hand, tradenames or nontechnical marks were those that failed to meet the definition of technical trademarks but which served the same purpose. Those nontechnical marks included geographical and descriptive names and markings. 3 Callmann, *supra*, p. 22.

Initially, tradenames or nontechnical marks were protectible only by common law actions for unfair competition rather than by infringement actions, which could be brought to protect a trademark. *Vredenburg v. Safety Devices Corp.*, 270 Wis. 36, 41, 70 N.W.2d 226 (1955). Nevertheless, courts have long recognized that the protection afforded trademarks and tradenames stemmed from the same fundamental principles even though different names were given to the causes of action. *American Steel Foundries v. Robertson*, 269 U.S. 372, 380 (1926); *Atlantic Monthly Co. v. Frederick Ungar Publishing Co.*, 197 F. Supp. 524, 529 (S.D.N.Y. 1961).

In time it came to be realized that any difference in the protectibility to be afforded a trademark, vis-a-vis a tradename, resulted from a failure to discern and acknowledge that the functional differences were minimal or nonexistent. *See, generally,* Handler and Pickett, *Trade-marks and Trade Names—An Analysis and Synthesis*, 30 Col. Law Rev. 168 (Part I) and 759 (Part II) (1930). Over the years courts have accepted the principle that a tradename or nontechnical mark which has acquired a secondary meaning in itself becomes distinctive and can be protected by a common law infringement action. 3 Callmann, *supra*, sec. 66.1.

"Secondary meaning" is a term which describes the function that a nontechnical mark comes to have through

use—the function of identifying the source of goods or services. *G. & C. Merriam Co. v. Saalfield,* 198 F. 369, 373 (6th Cir. 1912), *cert. denied* 243 U.S. 651.

Restatement (Second) of *Torts,* capsulizes this trend of the courts to bring the definitions of tradenames and trademarks in harmony with their function. Tentative Draft No. 8 (1963), sec. 715, defines both trademarks and tradenames which have acquired a secondary meaning as trademarks. The term, "tradename," standing alone, refers to a business name. Sec. 716, *supra.* Sec. 715 defines trademark:

"A trademark is a word, name, symbol, device, letter, numeral, or picture, or any combination of any of them in any form or arrangement, which is used by a person on or in connection with his goods or services in a manner which identifies them as his and distinguishes them from those of others, provided such use is not prohibited by legislative enactment or by an otherwise defined public policy."

The Restatement (Second), in accordance with modern court decisions, concludes that trademarks, both technical and nontechnical, as well as tradenames (business names), are all protectible in a common law action for infringement. Sec. 717, *comment a,* explains:

"The opinions of some courts seem to suggest that there are substantive differences between the protection of trademarks and tradenames. For example, it is sometimes stated that for infringement of marks the appropriate remedy is an action for infringement, whereas for tradenames the appropriate remedy is for unfair competition; that fraud on the part of the actor is essential for relief in tradename infringement, but not so in the case of infringement of marks; and that the scope of relief is narrower in one than the other. The weight of authority, however, supports the proposition that if a tradename has acquired distinctiveness, or secondary meaning, and thus identifies a particular business entity, the user of

such tradename is entitled to protection against infringement of that tradename in the same manner and to the same extent as the user of a trademark which has acquired a secondary meaning, that is, to protect the user of the tradename in his business and to protect the public against confusion and deception. The mere fact of the use of a tradename, however, is not sufficient to entitle the user to enjoin all other uses. It is necessary to show that the effect of the use has been to identify the particular business entity and to distinguish it from others and that the actor's use is likely to cause confusion and deception."

We conclude that the Restatement appropriately enunciates the modern rule applicable to the protection of trademarks, tradenames, and business names, and we adopt the rule and rationale of Restatement (Second) of *Torts*, Tentative Draft No. 8 (1963), secs. 715, 716, and 717, as the common law of Wisconsin.

Although the plaintiff First Wisconsin asserts that the phrase, "First Wisconsin," is a valid technical mark, we need not reach that conclusion, for the record demonstrates, and the trial court found, that at a minimum the plaintiffs have established "First Wisconsin" as a nontechnical mark that has acquired secondary meaning, that is, that through use it has come to be a method of identifying the source of the services offered by the First Wisconsin group. As set forth in the Restatement, *supra,* a nontechnical mark which has acquired a secondary meaning is entitled to the same protection in an infringement action that is to be accorded to a technical mark.

The trial court found that a secondary meaning had been acquired by the bank group by the uninterrupted use of "First Wisconsin" since 1919, the emphasis on those two words rather than the full name of the bank and its affiliates since at least 1966, and by the conscious advertising and promotional efforts which have resulted in expenditures of more than $1,000,000 per year for

each year since 1966 for the purpose of insuring the identification of "First Wisconsin" with the services offered by the related bank group.

While it is at least arguable that "First Wisconsin," as a consequence of the conscious promotional campaign undertaken since 1966, can be considered a technical name of an arbitrary, fanciful, or nondescriptive nature, we do not make that determination, for the finding of the trial court that the term has acquired a secondary meaning is not contrary to the great weight and clear preponderance of the evidence. Moreover, at oral argument, the defendant specifically conceded that "First Wisconsin" had acquired a secondary meaning identifying it with the plaintiffs.

Although defendant Wichman has abandoned any claim that the name, "First Wisconsin," has not acquired a secondary meaning, he asserts the defense that a common law action for infringement must be based upon additional factors—that the name was used by another with fraudulent intent and under circumstances where the goods or services of the plaintiff and defendant are in competition. There is some basis for the defendant's position. Support for that proposition, however, is largely archaic. *See, generally,* Callmann, *supra,* sec. 86.1(a), p. 1052. It receives no support in the rationale of the Restatement (Second), *supra,* sec. 717, *comment a.*

As Callmann points out, early cases, while holding that fraudulent intent need not be demonstrated where a technical mark was involved, insisted on proof of fraud where infringement of a nontechnical mark was asserted. Once, however, it was recognized that a nontechnical mark or name which has acquired a secondary meaning serves the same function as a trademark, i.e., to identify the source for the goods or services, it became apparent that the requirement of fraud on the part of the defend-

ant is irrelevant in respect to a common law action brought to protect either type of mark. The emphasis in the law has moved from the intent of the defendant to the effect of the defendant's infringement upon the plaintiff. While the defendant relies on Callmann's synopsis of the early law of trademarks requiring fraudulent intent, he fails to emphasize that Callmann terminates the discussion with the statement that the requirement of proof of fraudulent intent is "obsolete law." Sec. 86.1(a), p. 1060.

As the defendant asserts, some of the language of this court's opinion in *Vredenburg v. Safety Devices Corp.*, 270 Wis. 36, 70 N.W.2d 226 (1955), could be construed to require that fraud, as well as unfair competition, be proved as an element of an action claiming infringement on the use of a name that has acquired a secondary meaning. *Vredenburg* was based upon the 1924 case of *Barton v. Rex-Oil Co.* (3d Cir. 1924), 2 F.2d 402, 40 A.L.R. 424. By 1955, however, the doctrine of that case was substantially undermined. *See, Peters v. Machikas*, 378 Pa. 52, 59, 105 A.2d 708 (1954); Restatement (Second), *supra*, sec. 717, *comment a*. While the language relied upon by defendant is dicta and not a holding of the court, we conclude that the language is contrary to the accepted law of trademark infringement as set forth in Restatement (Second), sec. 717, *comment a*. We specifically overrule the language appearing in *Vredenburg, supra*, on page 42, that arguably asserts that an injunction for infringement might lie only if "unfair competition—fraud" is established. We expressly hold herein, any language of *Vredenburg* notwithstanding, that the elements of an action for infringement on a technical mark and the elements for infringement on a nontechnical name or mark which has acquired a secondary meaning are identical.

There is nothing to show that the appropriation of the name, "First Wisconsin," by Wichman for his building

business was fraudulent, but such showing is not required.

Additionally, the defendant contends that even a tradename which has acquired a secondary meaning is not entitled to protection where there is no evidence of competition. The trial judge stated that, although the bank group and the home builder were not in direct competition, "better reasoned opinions make competition a mere factor, rather than an essential element." The trial judge placed his emphasis upon the element of confusion, that is, that the use by another of a name which has acquired a secondary meaning confuses the public as to the sponsorship of the goods or services bearing identical names. We conclude that the trial judge relied upon the proper rule of law. As set forth in the Restatement (Second), *supra,* sec. 717, *comment a.*

"It is necessary to show that the effect of the use has been to identify the particular business entity and to distinguish it from others and that the actor's use is likely to cause confusion and deception."

Competition is not an element of this test. The test is stated by Callmann, *supra,* sec. 80, p. 538:

"It is the gravamen of an action for trademark infringement that the defendant's use of a trademark similar to the plaintiff's created a likelihood of confusion."

It should be recalled, in the application of this test, that, under the nomenclature of the Restatement, a mark which has acquired a secondary meaning is a trademark. Confusion, of course, could occur in a competitive situation when an ordinarily prudent purchaser purchases one product, believing it to be a product manufactured by another. *Seven-Up Co. v. Get Up Corp.,* 340 F.2d 954 (6th Cir. 1965). As is recognized by the very definition of a mark having a secondary meaning, confusion may also result where the public purchases the goods and services of

one entity in the belief that the sponsorship or origin is that of another business entity. *Dodge Bros. v. East,* 8 F.2d 872, 875 (E.D.N.Y. 1925) ; *Aetna Casualty & Surety Co. v. Aetna Auto Finance, Inc.,* 123 F.2d 582 (5th Cir. 1941), *cert. denied,* 315 U.S. 824. The Restatement (Second), *supra,* sec. 729, *comment a,* describes this as "confusion of source" or confusion as to sponsorship.

██

While the defendant is arguably correct in asserting that there can be no confusion of goods without competition, confusion of business or confusion as to sponsorship does not require competition. *Colorado National Co. v. Colorado National Bank of Denver,* 95 Colo. 386, 36 P.2d 454 (1934) ; 3 Callmann, *supra,* sec. 80.3, p. 550. It is clear that the Restatement standards, particularly *comment a* to sec. 717, do not require a confusion of goods between competitors, but rather a confusion of business entities when the trademark is either technical or has acquired a secondary meaning so that it identifies the particular sponsoring business entity and distinguishes it from others. Only a likelihood of confusion is required by the Restatement.

The Restatement's position is supported by modern case law. In *Harold F. Richie, Inc. v. Chesebrough-Pond's, Inc.,* 281 F.2d 755, 761 (2d Cir. 1960), the court said :

"Actual confusion or deception of purchasers is not essential to a finding of trademark infringement or unfair competition, it being recognized that 'reliable evidence of actual instances of confusion is practically almost impossible to secure.' "

██

The defendant's own evidence acknowledged that at the time he was choosing a name for his business he was warned by a friend of the likelihood that his selection of the name, "First Wisconsin Home Company," could be

confused with the name used by the First Wisconsin bank group. The defendant also testified that a newspaper reporter who was writing a story about Wichman's business asked whether he was connected with the First Wisconsin bank. A customer of Wichman wondered whether there might be a relationship between the bank and Wichman's home building company and consulted his broker to clarify the confusion. A builder called a bank officer and asked whether Wichman's company was associated with the First Wisconsin bank. Moreover, as the trial judge pointed out, Wichman himself thought it necessary to inform his customers that his building enterprise was not related to, or associated with, the bank group. Wichman stressed in his testimony that he disavowed to his customers any connection with the bank. The trial judge's opinion concluded that Wichman was fully aware of the likelihood of confusion.

It is evident from the testimony that there was not only the likelihood of confusion with respect to the sponsorship of the building company, but that there was substantial evidence of actual confusion. We conclude that the trial court's finding of confusion is not contrary to the great weight and clear preponderance of the evidence.

It should also be emphasized that the plaintiffs and defendant do business in the Milwaukee area and, although they are not in direct competition, their businesses are in some respects overlapping. The plaintiff bank and its related bank group sell real estate on occasion and they provide financing to builders and to the customers of builders. There was evidence which would tend to show that the bank might lose the business of builders if they were to conclude from the use of the name, "First Wisconsin Home Company," that the bank was engaged in the business of home construction. The trial court did not, however, base its conclusion upon this possibility.

While we are satisfied that there was no showing of fraud or conscious deception on the part of Wichman

when he took the name, "First Wisconsin," the record demonstrates that the plaintiffs' previously established trademark was infringed upon when the defendant appropriated the identical name and used it in a manner which created not only likely confusion as to the sponsorship of the building corporation but resulted in actual confusion by persons who dealt with both users of the name.

We also conclude that the plaintiffs' action is not barred by laches. Although the defendant used the name for almost three years prior to any demand by the bank group that he desist, such demand was made promptly after a responsible officer of the plaintiff bank became aware of the defendant's use of the name. There was no unreasonable delay by the plaintiffs in bringing their action, and the entire record demonstrates that the plaintiffs have been assiduous and diligent in protecting the name, "First Wisconsin," from infringement by the defendant and others. The defense of laches is inapplicable under these circumstances. *See, Paterson v. Paterson,* 73 Wis.2d 150, 153, 242 N.W.2d 907 (1976) ; *Becker v. Becker,* 56 Wis.2d 369, 375, 202 N.W.2d 688 (1972).

The conclusion of the trial court that the defendant infringed upon the plaintiffs' trademark was reached relying on the particular facts of this case—that the parties used the name, "First Wisconsin," in the same geographical area and in overlapping businesses. We do not reach the question whether plaintiffs can prevent any other use of the name, "First Wisconsin," anywhere in the state in connection with any type of business.

*By the Court.*—Judgment affirmed.