SPHEERIS SPORTING GOODS, INC., a Wisconsin corporation, Plaintiff-Appellant,

v.

SPHEERIS ON CAPITOL, a Wisconsin corporation, Andrew J. Spheeris and Paul J. Spheeris, Defendants-Respondents.†

Court of Appeals

*No. 89-0856. Submitted on briefs February 7, 1990.—Decided July 3, 1990.*

(Also reported in 459 N.W.2d 581.)

†Petition to review denied.

299

301

For the plaintiff-appellant the cause was submitted on the briefs of *Michael S. Polsky* of *Trebon & Polsky* of Milwaukee, Wisconsin.

For the defendants-respondents the cause was submitted on the briefs of *Eugene R. Sawall* of *Andrus, Sceales, Starke & Sawall* of Milwaukee, Wisconsin.

Before Moser, P.J., Sullivan and Scott, JJ.

SULLIVAN, J.   In this appeal, Spheeris Sporting Goods, Inc. (Sporting Goods), a retail sporting goods merchandiser, challenges part of an order for a preliminary injunction entered in its favor.[1] The preliminary injunction was directed at a competitor, Spheeris on Capitol, and its principal owners, brothers Andrew J. Spheeris and Paul J. Spheeris (collectively, the Spheeris Group). The preliminary injunction prohibited the Spheeris Group from using the names, "Spheeris on Capitol" or "Spheeris Sporting Goods," or any substantially similar name. Sporting Goods challenges that part of the order authorizing the Spheeris Group to sell retail sporting goods under the names "Spheeris Brothers" or "Spheeris Merchandise."

Sporting Goods contends that any use of "Spheeris" in connection with the retail sale of sporting goods should be enjoined. It argues that the name has acquired a secondary meaning in the Milwaukee area and is entitled to protection against infringement. It also argues that inclusion of "Spheeris" in the approved names makes them confusingly similar to "Spheeris Sporting Goods" and violates an agreement between itself and the Spheeris brothers. We conclude that the trial court abused its discretion when it failed to consider whether, under the circumstances of this case, any use of "Spheeris" by the Spheeris Group is confusingly similar to "Spheeris Sporting Goods." Accordingly, we reverse that part of the trial court's order approving use of "Spheeris Merchandising" and "Spheeris Brothers" and remand the cause for further proceedings.

For several years prior to 1979, Spheeris Merchandise Corp. (Merchandise Corp.) operated a retail discount store located in Milwaukee at North 72nd Street

---

[1]Leave to appeal the nonfinal order was granted under Rule 809.50, Stats.

and Capitol Drive. The store carried sporting goods, jewelry, luggage, closeouts, and other items. The store did business under the corporate name, and the building was owned by the corporation. The Spheeris brothers owned the stock of Merchandise Corp.

In 1979, Lawrence A. Hankin and others organized Sporting Goods to acquire the assets of Merchandise Corp. and lease the building on Capitol. Their purpose was to operate a retail store selling sporting goods. The lease of the building was for five years with three five-year renewal periods. The brothers and Merchandise Corp. agreed not to compete during the lease terms. The following clause, which is relevant to this case, was also in the agreement:

> 10. [Merchandise Corp.], A[ndrew] Spheeris and P[aul] Spheeris, and each of them, hereby consent to [Sporting Goods'] use of the name "Spheeris Sporting Goods" (or any variation thereof), hereby assign to [Sporting Goods] any and all rights which they may have in and to such name and agree not to hereafter use such name or any name confusingly similar to it.

Sporting Goods also agreed to employ the Spheeris brothers for at least one year.[2]

From 1979 to 1989, Sporting Goods operated its retail sporting goods store at the Capitol location. It advertised extensively, using newspapers, radio, television, and yellow pages. There was testimony that the advertising budget was approximately $88,000 per year. Some of the advertising identified the store merely as "Spheeris," followed by the address. There was also tes-

---

[2]The brothers remained employed by Sporting Goods for three or four years. There was conflicting testimony over whether they left voluntarily or were forced to resign.

timony that the store's annual sales were over two million dollars.

Sporting Goods and Merchandise Corp. could not negotiate the terms for the lease renewal to begin in 1989. Merchandise Corp. sought an increase in rent. The brothers also sought to restrict Sporting Goods' use of the Spheeris name to the Capitol location, to the term of the lease, and to Hankin's control of the company. After several months, the brothers broke off negotiations and began planning to open a store in the building. The store would be similar to their original business and would sell sporting goods. Spheeris on Capitol was incorporated to operate the store.

Sporting Goods moved to a smaller, less expensive location at North 76th Street and Mill Road. Upon learning that the brothers planned to name their new store "Spheeris on Capitol," Sporting Goods filed suit for an injunction and damages. It sought to prevent the use of any name that included "Spheeris."

The testimony concerning the negotiations to renew the lease was contradictory. Sporting Goods presented testimony that the proposed rent was too high, that the brothers threatened to open a competing store if the lease was not renewed, and that the brothers said they would do anything to get their name back. Andrew Spheeris testified that Sporting Goods frequently changed its position during the discussions and demanded $100,000 worth of improvements. He denied that he threatened to open a competing store if the lease was not renewed. He claimed the brothers were only opening the store to protect their investment in the building.

■■■

The decision to grant or deny a temporary injunction is within the trial court's discretion and will only be

reversed where the trial court abuses its discretion. *Browne v. Milwaukee Bd. of School Directors,* 83 Wis. 2d 316, 336, 265 N.W.2d 559, 568, *reh'g denied,* 83 Wis. 2d 340b, 267 N.W.2d 379 (1978). An abuse of discretion occurs where the trial court fails to make a record of the factors relevant to its determinations, fails to consider the proper factors, or clearly gives too much weight to one factor. *Id.* The factors to be considered for a temporary injunction are identified in sec. 813.02(1), Stats. The movant must show a reasonable probability of success on the merits, an inadequate remedy at law, and irreparable harm. *Werner v. A. L. Grootemaat & Sons, Inc.,* 80 Wis. 2d 513, 519–20, 259 N.W.2d 310, 313–14 (1977). Generally, a preliminary injunction is appropriate to prohibit unfair competition. *Mercury Record Prod., Inc. v. Economic Consultants, Inc.,* 64 Wis. 2d 163, 188, 218 N.W.2d 705, 717 (1974), *cert. denied,* 420 U.S. 914 (1975). The terms of a temporary injunction are also within the trial court's discretion.

In announcing its decision, the trial court found that Sporting Goods had made the requisite showing for a preliminary injunction and decided that the Spheeris Group could not use any name containing "On Capitol" or "Sporting Goods." The court enjoined use of "Spheeris on Capitol" because, over time, the store operated by Sporting Goods had become known to customers as "Spheeris" on Capitol. Because the parties had intended in 1979 that Merchandise Corp. continue in some form, the trial court allowed use of that name. The court further bolstered this conclusion by noting that the 1979 agreement's noncompetition clause was limited to the term of the lease. The court also approved use of "Spheeris Brothers."[3]

---

[3]The court, somewhat disapprovingly, characterized Sporting Goods' use of the Spheeris name as deception agreed to by the

The decision to grant a preliminary injunction is not challenged. Rather, Sporting Goods argues that the scope of the preliminary injunction was insufficient because any use of "Spheeris" is confusingly similar to "Spheeris Sporting Goods," and violates the 1979 agreement.

Although Sporting Goods' right to use "Spheeris" was granted in the 1979 agreement, we do not look only to the agreement for controlling law. Because it is a corporate name, "Spheeris Sporting Goods" is a trade name, 3 L. Altman, *Callmann, The Law of Unfair Competition, Trademarks and Monopolies,* sec. 17.05 (rev. 4th ed. 1983) [hereinafter, *Callmann*], entitled to protection against unfair competition. *First Wisconsin National Bank v. Wichman,* 85 Wis. 2d 54, 61, 270 N.W.2d 168, 171–72 (1978). Imitation of a sign, trade name, package, or other distinguishing feature, if intended to mislead the public into believing they are dealing with a different establishment, is unfair competition in trade. *Manitowoc Malting Co. v. Milwaukee Malting Co.,* 119 Wis. 543, 546, 97 N.W. 389, 390 (1903). A competitor who imitates a trade name can be restrained from passing off the imitation if deception of the public is probable. *See id.* at 546–47, 97 N.W. at 391.

brothers. This characterization was based on the testimony of Hankin. He testified that acquiring use of the name had been very important when the assets were purchased in 1979. Part of the reason was because Merchandise Corp. was a major sporting goods outlet in the city, and "Spheeris" was associated with sporting goods. Additionally, he did not want his connection with the new business known. At the time, he sold sporting goods wholesale, and he did not want his wholesale customers to know he was competing with them in the retail market.

The protection afforded "Spheeris Sporting Goods" as a trade name, however, is affected by its use of a family name. Ordinarily, a party has the right to do business under his or her own name. *A. W. Thompson Co. v. Thompson,* 224 Wis. 519, 523, 272 N.W. 343, 345 (1937). The right may, however, be voluntarily limited by contract. *Id.* Conversely, one may transfer to another the right to use his family name. Although not relevant here, it has been held that when a family name is part of a trade name, the family name may be transferred to the purchaser the same as any other asset of the business. *Dovenmuehle v. Gilldorn Mortgage Midwest Corp.,* 871 F.2d 697, 700–01 (7th Cir. 1989). If the purchaser loses the trade name through non-use, it reverts to the public domain, not to the prior owner. *Id.* at 701.

The Spheeris brothers voluntarily agreed that Sporting Goods could use the name, "Spheeris Sporting Goods." They also agreed not to use "such name or any name confusingly similar to it." At issue is whether any name using the family name "Spheeris" is confusingly similar to "Spheeris Sporting Goods."

Confusing similarity is also the standard applied to determine whether injunctive relief is appropriate in a trade-name unfair competition case. Although the purpose of unfair competition law is to prevent deception of the public, actual deception need not be shown. *Callmann,* secs. 17.05, 20.07. It is sufficient that there is a likelihood of deception from names that are confusingly similar. *Id.,* sec. 20.07. While the similarity of trade names has been extensively litigated, that body of law is just a guide. In making the determination of whether two names are confusingly similar, a court faces a decision that involves both analysis and reaction and that is highly fact specific. *Id.,* sec. 20.08.

> The line of demarcation between fair and unfair competition is seldom easy to draw. Subtlety rather than openness characterizes the encroachment upon the rights of a competitor legally in possession of the market. The particular facts, rather than attempted legal definitions, must control.

*Brinkman v. Laurette Mfg. Co.*, 21 F.2d 607, 613 (D. N.J. 1927). Ultimately, the test of whether there is a likelihood of confusion as to the source of a product or service is whether "an appreciable number of ordinarily prudent prospective purchasers will be confused." *Sears, Roebuck & Co. v. Allstate Driving School, Inc.*, 301 F. Supp. 4, 15 (E.D. N.Y. 1969).

Whether trade names are confusingly similar presents a question of law. *Gaston's White River Resort v. Rush*, 701 F. Supp. 1431, 1436 (W.D. Ark. 1988). The criteria for determining whether names are confusingly similar varies. The decision is affected by the character of the goods or services, their use, the characteristics of the consumer group, and the manner of sale. *Callmann,* sec. 20.07. The circumstances surrounding the names' use are almost as important as the trade names themselves. A defendant may not mislead the public into believing it is trading with another, and in deciding whether there is a possibility of deception, similarity of names, signs, locations, and products are all factors to be considered.[4] *Blair's Foodland, Inc. v. Shuman's Food-*

---

[4]Federal case law has identified several factual matters to be considered. Factual issues include the strength and distinctiveness of plaintiff's trade name; the similarity and proximity of the goods or services offered; the similarity of the challenged trade name; evidence of actual confusion; overlap of marketing channels used by plaintiff and defendant; degree of care likely to be exercised by consumer in selecting product or service; defendant's

*land, Inc.,* 40 N.E.2d 303, 305 (Mass. 1942).

On the record before us, two factors are critical: the location and the type of goods sold. The parties, both retail sellers of sporting goods, apparently compete for the same target group. Furthermore, the Spheeris Group has taken over a business location that Sporting Goods occupied and advertised for ten years. The goodwill of a going concern includes not only its name, but its place of business and telephone number. *Caigan v. Plibrico Jointless Firebrick Co.,* 65 F.2d 849, 850 (1st Cir.), *cert. denied,* 290 U.S. 668 (1933). Customers satisfied with prior business relationships have a tendency to continue those relationships by going to the same store location or using the same telephone number.

A direct competitor's use of the same term in a business name was enjoined when the second business was located in proximity to the first. Use of the word, "Equity," was prohibited where competing real estate companies with the same term were located six or seven blocks apart. *Equity Investing Corp. v. Wilkinson,* 188 N.Y.S.2d 1021, 1022-23 (Sup. Ct. 1959). A competitor was prohibited from using "Campus" where two clothing manufacturing firms were within the same block. *Campus Coat Co. v. Campus Togs, Inc.,* 32 N.Y.S.2d 221, 222 (Sup. Ct. 1941). Even use of a family name was enjoined in *David B. Findlay, Inc. v. Findlay,* 218 N.E.2d 531, *modified,* 219 N.E.2d 872 (N.Y.), *cert. denied,* 385 U.S. 930 (1966). Two brothers, operating independently, had established art galleries in New York and Chicago. The New York gallery was "Findlay Galleries" but was also known as "Findlay's on 57th Street." Although there was no agreement limiting either brother's use of the family name, the court approved an injunction prohibit-

---

intent when selecting trade name; and likelihood of expansion. *See Gaston's White River Resort,* 701 F. Supp. at 1436.

ing the operator of the Chicago gallery from operating "Wally Findlay Galleries" on 57th Street in New York City. *Id.* at 535.

Here, the trial court considered which store was "Spheeris" on Capitol. It did not explicitly consider the likelihood of confusion resulting from a store with "Spheeris" in its name selling retail sporting goods in the location Sporting Goods had occupied for ten years. Although it is a question of law whether any name with "Spheeris" would be confusingly similar to "Spheeris Sporting Goods," the record lacks sufficient factual findings for this court to decide the question. The trial court also allowed use of "Spheeris Merchandising" because the 1979 agreement anticipated that Merchandise Corp. would continue. The agreement, however, does not support the conclusion that Merchandise Corp. was to conduct any activity other than that associated with its role as landlord. Finally, the trial court's reliance on the limited non-competition clause is misplaced. There is no contradiction between allowing the Spheeris Group to compete with Sporting Goods while requiring them to do so under a name that does not include "Spheeris." For these reasons, we conclude that the trial court abused its discretion when it specifically authorized use of "Spheeris Merchandise" or "Spheeris Brothers." Consequently, we reverse that part of the order. On remand, the trial court should reconsider the scope of the temporary injunction in light of this opinion.

Sporting Goods also contends that in the metropolitan Milwaukee area, the name "Spheeris" has acquired a secondary meaning identifying it with the retail sale of sporting goods. Whether a trade name has acquired a secondary meaning is a question of fact; *Hot Shoppes, Inc. v. Hot Shoppe, Inc.,* 203 F. Supp. 777, 782 (M.D.

N.C. 1962); however, the trial court did not make any finding on this issue.

Secondary meaning describes the function of identifying goods or services with a particular or single source. *First Wisconsin,* 85 Wis. 2d at 61-62, 270 N.W.2d at 172. When a trade name has acquired a secondary meaning, the name is entitled to protection from unfair competition based on trademark infringement. *Id.* at 60-61, 270 N.W.2d at 171-72. Infringement actions, even against a non-competitor, protect the reputation and goodwill exclusively appropriated to the trademark holder. *Dreyfus Fund Inc. v. Royal Bank of Canada,* 525 F. Supp. 1108, 1111 (S.D. N.Y. 1981). This is broader than the injunctive relief afforded to a trade name in order to protect the public from deception.

Key to establishing secondary meaning for a trade name is evidence that the relevant target group mentally identifies the trade name as the single source for the product. *Echo Travel, Inc. v. Travel Assoc., Inc.,* 870 F.2d 1264, 1266 (7th Cir. 1989). The relevant consuming public must recognize the trade name as identifying and distinguishing a plaintiff's goods or services. This public identification may be established through direct evidence, *i.e.,* consumer testimony or consumer surveys, or through circumstantial evidence. *Id.* at 1267. Circumstantial evidence includes evidence of exclusivity, length and manner of the trade name's use, amount and manner of advertising, amount of sales, market share, number of customers, etc. *Id.*

Reliance upon consumer surveys presents special problems. Surveys can be used as evidence to show either the likelihood of confusion or the acquisition of secon-

dary meaning. *See American Luggage Works v. United States Trunk Co.,* 158 F. Supp. 50, 52 (D. Mass. 1957). The potential universe of survey respondents may not be the same for each purpose. *Id.* The proponent offering a survey as evidence of secondary meaning must establish that it is representative of the opinions of potential consumers of the product. *Dreyfus Fund,* 525 F. Supp. at 1116. If there are two markets where secondary meaning is significant, the survey must poll both. *American Luggage Works,* 158 F. Supp. at 52 (wholesale dealers and retail customers were separate target markets for suitcases, and survey of wholesale dealers only was inadequate). The survey must also be prepared by competent, impartial professionals. *Dreyfus Fund,* 525 F. Supp. at 1116.

Sporting Goods offered a consumer survey and the testimony of Alison L. Murphy, who developed the survey. Neither supports a finding that "Spheeris" has acquired a secondary meaning. The survey respondents were drawn from people who had purchased guns from Sporting Goods. A sample of gun purchasers cannot be assumed to be representative of the potential customers for the wide array of other sports equipment that Sporting Goods sells. Furthermore, the survey objective was to determine the extent of customer confusion, and Murphy did not claim that its purpose was to measure product-source identification. Additionally, Murphy's testimony indicated that she did not understand secondary meaning. She specifically acknowledged that she equated secondary meaning with the situation where a trademark or trade name had lost its identification function and had become the generic name for a whole product category.

■

Although the direct evidence offered by Sporting Goods was insufficient as a matter of law to support a finding that "Spheeris" had acquired a secondary meaning, some circumstantial evidence was presented to the trial court. There was evidence regarding advertising, sales, and duration of use of the name. Whether the circumstantial evidence was sufficient to satisfy Sporting Goods' burden of proof is for the finder of fact to decide; however, the trial court did not make any findings on this issue. Accordingly, on remand, the trial court should also make specific findings of fact on whether "Spheeris" has acquired secondary meaning.

*By the Court.*—Order reversed and cause remanded with directions.