LISTMAN MILL COMPANY, Respondent, vs. WILLIAM LISTMAN MILLING COMPANY, Appellant.

*September 11 — October 2, 1894.*

*Trade-marks: Flour brand: Transfer with business: Infringement: Injunction.*

1. The word "Marvel," used in a flour brand to designate the output of a certain mill, is a valid trade-mark.
2. The trade-mark "Marvel," which had been used by a firm to designate the output of its flour mill, was registered in the name of L., one of the partners, who "originated" it. Its use was continued by the firm and by a corporation which succeeded the firm in the operation of the mill, and also by the plaintiff corporation, which purchased the site and erected a new mill after the burning of the old one. L. owned practically all the stock of the former corporation when the business was transferred to the plaintiff, and was largely interested in the latter and was its general manager for four years. He then sold his interest in the plaintiff, and became the president and general manager of the defendant corporation, which thereafter used the trade-mark "Marvel" upon the product of its mill, situated in another city. *Held,* that although there had been no express transfer of the trade-mark, the exclusive right to its use had passed to the plaintiff.

3. The use of the distinguishing feature of plaintiff's trade-mark in combination with others, constituting a trade-mark or brand so similar in appearance as probably to deceive customers or patrons of plaintiff's trade or business, will be restrained by injunction, although it is not shown that any one has in fact been deceived or that there has been intentional fraud.

APPEAL from the Circuit Court for *Douglas* County.

This is an appeal from an order denying a motion to dissolve a temporary injunction. The question involved is the title or right of the defendant to use a trade-mark or label as a distinctive mark of the flour manufactured by it.

The facts are substantially undisputed. In December, 1880, William Listman, as a general partner, and three other residents of La Crosse, as special partners, organized a limited partnership for the manufacture of flour in the city of La Crosse. The partnership then acquired a mill site and mill, the title to the real estate remaining in William Listman, who had owned it before. The partnership at once commenced the manufacture of flour to which the trade-mark "Marvel" was uniformly applied. The limited partnership, originally organized for three years, renewed several times, continued to about the month of December, 1887, when a corporation, the William Listman Mill Company, was formed. During all this time the same brand was put on the product of the mill. It seems that prior to the organization of this limited partnership the same mill was operated by a firm named White, Listman & Co., and that either this firm or William Listman personally applied the "Marvel" brand to its product as early as September, 1880. In December, 1887, the William Listman Mill Company was organized, Mr. Listman and his late special partners becoming interested in the corporation. To this corporation the legal title to the real estate was conveyed. It took possession of, and thenceforth operated, the mill, placing the brand "Marvel" upon all its

product. The mill continued to be so operated by this corporation until May, 1889, when it was destroyed by fire. It seems that after this fire Mr. Listman purchased of the other two stockholders their stock in the corporation, but the corporation was not dissolved, each of the retiring stockholders retaining a nominal holding at Mr. Listman's request.

The plaintiff company was organized July 2, 1889, and Mr. William Listman became a large stockholder in the same. The other stockholders were new men. To this corporation the mill site was conveyed, through Mr. William Listman. The corporation erected a new mill on the premises, which was ready for work by October, 1889. For four years, until the 1st day of October, 1893, William Listman was secretary and treasurer and general manager of the plaintiff corporation so manufacturing flour at said mill. During all that time all, or substantially all, the flour manufactured at this mill was marked and branded with the trade-mark "Marvel." The answer attempts to deny that all the flour manufactured at the mill was so branded, but it carefully refrains from stating from how much or from what proportion of the product it was omitted. It also appears that this trade-mark was carried on the letter heads and advertisements of the plaintiff corporation. When the new mill was about to start up the plaintiff issued a circular to the trade. It is dated "La Crosse, Wis., October 1st, 1889." It states that on May 1st the old mill had been completely destroyed by fire, then speaks in terms of commendation of the new mill with improved appliances which had been erected in its place, and adds: "We shall start on or about October 5th, and guaranty our new Model Mill to be capable of and will turn out the very best patent flour, manufactured from Minnesota and Dakota hard spring wheat, in the country, thereby sustaining the high standard of our 'Marvel.'" It closes

with an appeal for patronage, and is signed "*Listman Mill Co.*" Upon its face is an impress of the "Marvel" trade-mark.

It is conceded that William Listman "originated" the trade-mark, and that in 1884 he registered the same in the patent office of the United States in his own name, without disclosing any other party as interested; also, that no formal transfer of this trade-mark has ever been made by William Listman. The record contains no competent evidence of any express agreement ever made concerning this trade-mark. In his application for registration, Mr. Listman described the place and position of the different words on the disk, including his name, "William Listman," and adds, "But any and all such words may, except the word 'Marvel,' be omitted or changed at pleasure without materially altering the character of my trade-mark, the essential feature of which is the word 'Marvel,' in large, ornate capitals, as aforesaid."

In August, 1893, the defendant corporation was formed and commenced the erection of a mill at Superior, which was ready for operation the latter part of September, 1893. About the 1st of October, 1893, Mr. William Listman severed his connection with the plaintiff company, and became president and manager of the defendant company. After that the defendant placed the brand and used the trade-mark "Marvel" upon, and to advertise, the product of its mill.

For the appellant there were briefs by *Catlin & Butler* and *A. C. Paul,* and oral argument by *Mr. Paul.* They contended, *inter alia,* that the mere use of the brand by the partnership on flour made and sold by it, such use being with the consent and under the direction of Listman, did not operate as a transfer of the brand to said firm. *Kidd v. Johnson,* 100 U. S. 617; *George T. Stagg & Co. v. Taylor,* 27 S. W. Rep. 247; Browne, Trade-Marks, § 364; *Huwer v.*

*Dannenhoffer*, 82 N. Y. 499; *Hazard v. Caswell*, 93 id. 259; *McCardel v. Peck*, 28 How. Pr. 122–124; *Howe v. Searing*, 6 Bosw. 354; *Stetson v. Winsor*, 9 Phila. 513. After the incorporation of the William Listman Mill Co., Listman continued an officer thereof and managed its business, and used this flour brand just as he had used it in the business of the special copartnership, for the purpose of showing to the trade that *he* was the miller of the flour upon which this brand was used. The use by the corporation of the flour brand without any agreement or transfer to it would no more give the corporation title to the flour brand than the use by the special copartnership of the same flour brand would give said copartnership title to it. After the incorporation of the plaintiff company, Listman began the use of this brand in the company's business, and continued to use it until he withdrew from the company four years later. Under the above authorities, the most that plaintiff had in this brand was a license to use it. See, also, *Amoskeag Mfg. Co. v. Spear*, 2 Sandf. 599, 615. If the plaintiff did acquire the good will of the former partnership, or of the special copartnership, and thereby the right to use the flour brand, it cannot claim, in the absence of an express agreement, the exclusive right to use such brand. *Fish Bros. Wagon Co. v. La Belle Wagon Works*, 82 Wis. 546. The word "Marvel" was used to denote the grade, kind, or quality of the article, not its origin, manufacture, or ownership, and hence was not capable of being exclusively appropriated as a trade-mark. *Columbia Mill Co. v. Alcorn*, 150 U. S. 460; *Larabee & Co. v. Lewis*, 67 Ga. 561; *Colgon v. Dannheiser*, 35 Fed. Rep. 150; *Taylor v. Gillies*, 59 N. Y. 331; *Gray v. Koch*, 2 Mich. N. P. 119; *Brown Chemical Co. v. Stearns*, 37 Fed. Rep. 360; *Brown Chemical Co. v. Meyer*, 139 U. S. 540; *Rumford Chemical Works v. Muth*, 35 Fed. Rep. 524; *Choynski v. Cohen*, 39 Cal. 501; *Ayer v. Rushton*, 7 Daly, 9; *Carbolic Soap Co. v. Thompson*, 25 Fed. Rep.

625; *Town v. Stetson*, 5 Abb. Pr. (N. S.), 218; *Caswell v. Davis*, 58 N. Y. 223; *Hegeman v. Hegeman*, 8 Daly, 1; *Alden v. Gross*, 25 Mo. App. 123; *Van Beil v. Prescott*, 82 N. Y. 630; *Ball v. Siegel*, 116 Ill. 137.

For the respondent there were briefs by *George H. Gordon*, attorney, and *Winkler, Flanders, Smith, Bottum & Vilas*, of counsel, and oral argument by *Mr. Gordon* and *F. C. Winkler*. They argued, *inter alia*, that use is the source of title in trade-marks. *William Rogers Mfg. Co. v. Rogers & Spurr Mfg. Co.* 11 Fed. Rep. 495; *Shaw Stocking Co. v. Mack*, 12 id. 707, 714; *Atlantic Milling Co. v. Robinson*, 20 id. 217; *Trade-Mark Cases*, 100 U. S. 82, 92, 94. Generally speaking, on purchasing an establishment without special mention of trade-marks, brands, and labels which have been used in connection with it, the purchaser becomes entitled to their use. *Pepper v. Labret*, 8 Fed. Rep. 29; *Atlantic Milling Co. v. Robinson*, 20 Fed. Rep. 217; *Morgan v. Rogers*, 19 id. 596; *Kidd v. Johnson*, 100 U. S. 617; *Fish Bros. Wagon Co. v. La Belle Wagon Works*, 82 Wis. 546, 562; *Merry v. Hoopes*, 111 N. Y. 415. Upon the formation of a partnership with a person entitled to a trade-mark, the trade-mark, in the absence of express provisions in relation to it, becomes an asset of the partnership. Browne, Trade-Marks (1st ed.), § 362; *Sohier v. Johnson*, 111 Mass. 238; *Filkins v. Blackman*, 13 Blatchf. 440; *Bury v. Bedford*, 4 De G., J. & S. 352; *Menendez v. Holt*, 128 U. S. 514. The word "Marvel," being neither the description of an ingredient nor an adjective of quality, constitutes a good trade-mark. *Braham v. Bustard*, Cox, Manual of Trade-Mark Cases, No. 226; *Dixon v. Jackson*, id. No. 271; *Faber v. Hovey*, id. No. 481; *Rowley v. Houghton*, id. No. 301; *Alleghany Fert. Co. v. Woodside*, id. No. 364; *Ford v. Foster*, L. R. 7 Ch. App. 611; *Waterman v. Shipman*, 130 N. Y. 301; *Royal Baking Powder Co. v. Royal Chemical Co.* Cox, Manual of Trade-Mark Cases, No. 656.

Listman Mill Co. vs. William Listman Milling Co.

NEWMAN, J.   Only such names, words, and devices as
may be held to be adapted to point out the true source
and origin of the goods upon which such marks are used
can constitute valid trade-marks.   Such words as are merely
descriptive of the kind, nature, character, or quality of the
goods cannot be exclusively appropriated and protected as
a trade-mark.   But a valid trade-mark may consist of some
novel device, arbitrary character, or fancy word, applied
without special meaning, which by use and reputation
comes to serve the same purpose.   Such words and devices
are held to indicate sufficiently the true source and origin
of the goods, without particular addition of the name of
the manufacturer or dealer.   *Dunbar v. Glenn,* 42 Wis. 118;
*Marshall v. Pinkham,* 52 Wis. 572; *Gessler v. Grieb,* 80 Wis.
21, and cases cited; *Fish Bros. Wagon Co. v. La Belle
Wagon Works,* 82 Wis. 546.   The word " Marvel," used in
the plaintiff's flour brand, is such an arbitrary or fancy
word.   It is not, in any true sense, descriptive of any char-
acteristic or quality of the goods which it is used to desig-
nate, but rather indicates their origin or ownership.   It is
very much like the word " Bethesda," used to designate
the water of a certain spring in Waukesha county, which
was held to be a valid trade-mark in *Dunbar v. Glenn,* 42
Wis. 118.   It is used by the plaintiff in a similar way to
designate the output of its mill.   As was said in that case,
the word seems to have been adopted to indicate origin or
ownership, and to have a name by which the product of
the mill could be distinguished when bought and sold in
the market.   As was said in *Filley v. Fussett,* 44 Mo. 168,
this word was the prominent, essential, and vital feature
of the trade-mark.   The goods were known by this word
itself.   It constitutes a valid trade-mark, such as equity
will protect.

Title to a trade-mark is acquired and retained by appro-
priation and use.   While William Listman owned and con-

Wis.]                 · AUGUST TERM, 1894.                 341

Listman Mill Co. vs. William Listman Milling Co.

ducted the business, this word was a part of his trade-mark,— the distinguishing and essential feature; while the business was conducted by a copartnership, it was the trade-mark of the copartnership; and, when the same business was done by a corporation, it was the trade-mark of the corporation. Through all these changes of ownership of the plant and business it continuously designated the output and product of the same mill. It did not cease to be the trade-mark, to designate its output of flour, when or because Listman sold his stock in the corporation and ceased to have an interest in the business. It had been appropriated and used to designate and give a name to the product of the same mill and business, by which it was known in the market through all these successive proprietaries, and during all this time it had not been used to designate any article of which Listman himself was sole proprietor.

Listman seems to have owned virtually the entire plant and business at the time when he conveyed to the corporation. He says that it was not understood that the title to the trade-mark passed by that conveyance. This seems to mean that nothing was said about it. There was no agreement that it should pass. Under such circumstances it is a question of law whether it did pass. Listman was one of the promoters of the corporation. He conveyed to it the mill site, with the business and good will,— at least, all the title he had in it. Ordinarily the good will of a business passes by a conveyance of the place where the business has been carried on, without special mention. The purchaser who acquires such good will takes with it the exclusive right to the use of such trade-marks as have been up to that time in use in the business, without mention of them in the contract of sale. 17 Am. & Eng. Ency. of Law, 1187, and cases cited in the notes; *Fish Bros. Wagon Co. v. La Belle Wagon Works*, 82 Wis. 546, and cases cited on page 562; *Shipwright v. Clements*, 19 Wkly. Rep. 599;

*Brass & I. W. Co. v. Payne,* 50 Ohio St. 115. Many of the cases are where one partner sells out to the other partners. It cannot be less clear when a mere stockholder in a corporation transfers his stock, for a mere stockholder has no title in the corporate property. So it seems right to hold that, whatever property Listman may have had in this trade-mark at some earlier date, none remained to him after he ceased to be a stockholder in the plaintiff corporation.

The defendant has used this word "Marvel" as a part of its flour brand or trade-mark against the plaintiff's protest and objection. It has used it in combination with other words, so as to constitute a brand or trade-mark so similar in appearance to the plaintiff's that the difference might easily pass without observation to casual observers. The plaintiff complains only of its use of the distinguishing word "Marvel." In order to support the action the imitation of the trade-mark need not be exact or perfect. It may be limited and partial. Nor is it requisite that the whole should be pirated. Nor is it necessary to show that any one has in fact been deceived. Nor is it necessary to prove intentional fraud. If the court sees that the plaintiff's trade-marks are simulated in such a manner as probably to deceive customers or patrons of its trade or business, the piracy should be checked at once by injunction. *Filley v. Fassett,* 44 Mo. 178, and cases cited. It is a proper case for the issuance of an injunction.

*By the Court.*— The order of the circuit court is affirmed.