VREDENBURG, Respondent, vs. SAFETY DEVICES CORPORATION, Appellant.

*April 7—May 3, 1955.*

For the appellant there were briefs by *Peter J. Kondos, Mark M. Camp,* and *Michael J. Kondos,* all of Milwaukee, and oral argument by *Mr. Peter J. Kondos* and *Mr. Camp.*

For the respondent the cause was submitted on the brief of *D'Amato & Fryatt* of Waukesha.

BROWN, J. The allegations of the amended complaint material to the questions raised by the appeal are:

"3. That, as the plaintiff is informed and verily believes, the defendant has since December 1, 1953, and at all times material herein been engaged in the manufacture, sale, and

marketing of a metal collapsible sawhorse known as 'Handi-Horse;' . . .

"4. That the plaintiff has, since May 28, 1949, produced an adjustable steel horse known as 'Handi-Horse;' that said name 'Handi-Horse' was published and the plaintiff's product identified by said name 'Handi-Horse.'

"5. That the plaintiff has since said time and now does manufacture and market said product known as 'Handi-Horse;' that said 'Handi-Horse' has both national and international circulation and market.

"6. That the plaintiff owns and has exclusive right to the use of the trade-mark 'Handi-Horse' and has during the period of said use continuously advertised said product and trade-mark both nationally and internationally.

"7. That as the plaintiff is informed, and verily believes, the defendant has for sometime past, without authority or right infringed upon the rights of the plaintiff by using the name 'Handi-Horse' upon its products to the plaintiff's damage; that the plaintiff has at no time consented or permitted the defendant to use said name.

"8. That on or about January 12, 1954, when the plaintiff learned that the defendant was infringing upon the trade-mark the plaintiff caused to be served upon the defendant a notice to cease and desist from using the name 'Handi-Horse.'

"9. That pursuant to said notice the defendant on January 15, 1954, agreed to discontinue the use of said name 'Handi-Horse;' that the plaintiff is informed and verily believes that the defendant's agreement was intended to mislead and injure the plaintiff; that the plaintiff is informed and verily believes the defendant has continuously and still uses the name 'Handi-Horse,' all to the damage of the plaintiff."

The order overruling the demurrer and granting the injunction was entered August 16, 1954. Notice of appeal is dated November 15th and the record transmitted by the trial court to this one was received here December 6, 1954. The only demurrer appearing therein is one on the ground that there is another action pending between the same parties for the same cause. Appellant says (and respondent denies) that the order appealed from does not deal with that demurrer

but with a general demurrer. On March 23, 1955, long after the record came to the supreme court, appellant filed in the trial court, and caused to be transmitted to us as a supplemental return, the affidavit of appellant's counsel that in June, 1954, he served and filed a general demurrer to the complaint but that for reasons unknown it was not in the trial court's file of this action on the date when the record was transmitted to this court. What purports to be a copy of that general demurrer is attached to the affidavit.

We have no reason to doubt counsel's allegations but we are bound by the record and that is not to be enlarged by supplemental material which neither the trial court, acting within its jurisdiction, nor we, acting within ours, have ordered incorporated in it. *Howard v. Howard* (1955), 269 Wis. 334, 69 N. W. (2d) 493. The record before us contains no general demurrer and the order which overrules a demurrer of some sort contains nothing to indicate that the demurrer which it overruled was a general one. On such a record we are unable to say that the trial court was in error in overruling whatever demurrer it was then considering. Hence, that part of its order must be affirmed.

When we take up the appeal from the part of the order which grants the temporary injunction, the sufficiency of the complaint immediately becomes material, for if it appears there that the plaintiff is not entitled to the permanent injunction which his complaint demands, the court ought not to give him the same relief temporarily.

"Where the issuance of a preliminary injunction would have the effect of granting all the relief that could be obtained by a final decree and would practically dispose of the whole case, ordinarily it will not be granted, unless complainant's right to relief is clear." 43 C. J. S., Injunctions, p. 428, sec. 17.

"The propriety of an injunction *pendente lite* depends upon the showing of a reasonable probability of plaintiff's

ultimate success, . . ." *Halsey, Stuart & Co. v. Public Service Comm.* (1933), 212 Wis. 184, 196, 248 N. W. 458; *Welch v. Chippewa Sales Co.* (1948), 252 Wis. 166, 168, 31 N. W. (2d) 170.

The contention of the complaint is that plaintiff has established an exclusive right to the use of the term "Handi-Horse" as a trade-mark to identify an adjustable sawhorse which he makes and sells. It is obvious that the term is intended to and does describe the use and virtues of the article to which it is applied. As such it is not eligible for protection as a trade-mark. Such words as are merely descriptive of the kind, nature, character, or quality of the goods cannot be exclusively appropriated and protected as a trade-mark. *Listman Mill Co. v. William Listman Milling Co.* (1894), 88 Wis. 334, 340, 60 N. W. 261.

"A trade-mark performs a distinctive office. As such its use may be protected by the courts. But this does not authorize a monopoly upon fragments of the language, nor the exclusive appropriation of words in common use descriptive of common objects and qualities. It has often been decided that words which are merely descriptive of the kind, nature, style, character, or quality of the goods or articles sold, cannot be exclusively appropriated and protected as a trade-mark." *Marshall v. Pinkham* (1881), 52 Wis. 572, 577, 9 N. W. 615.

The misspelling of the word *handy* does not improve plaintiff's position nor change the rule.

"Words which are not purely invented words, but are merely corruptions of words descriptive of some special merit, quality, or characteristic possessed by the articles to which they are applied and of which they are intended to be descriptive, cannot properly be the subject of exclusive use as a trade-mark." 52 Am. Jur., Trade-marks, Trade Names, etc., p. 546, sec. 61.

A good illustration and one most pertinent to the present case is found in *Barton v. Rex-Oil Co.* (3d Cir. 1924), 2 Fed. (2d) 402, 40 A. L. R. 424. That action sought to restrain infringement of plaintiff's registered trade-mark "Dyanshine," used to identify plaintiff's shoe polish. The court held (p. 404):

". . . it will be enough to say that the word 'Dyanshine' is merely descriptive of the characteristics of the product [case cited]; and therefore this word, a collection of several words misspelled [case cited], is not a subject matter of a valid trade-mark."

We conclude that the injunction cannot be sustained on the theory of plaintiff's complaint that "Handi-Horse" is a trade-mark which he owns and has the exclusive right to use.

Under some circumstances, however, use of a descriptive name, or one like it, by a competitor may be unfair competition and restrained as such. In the *Dyanshine Case, supra,* the court said (2 Fed. (2d) 403):

"But a descriptive name, though not originally capable of exclusive appropriation, may, by use and association with a commodity, obtain a secondary signification denoting that goods bearing it come from one source, and thus a superior right to its use may be acquired by the person who first adopted it. Inasmuch as no absolute ownership in or exclusive right to use such name as a trade-mark is vested in anyone, the rights obtained by the first user are not infringed by the mere use of such mark by a competitor, even though such use be in association with competing goods. If this were the whole law of the subject the matter would be easy. But just here arises another body of law, that of unfair competition. The law governing trade-marks is but a branch of the law regulating trade competition. The policy of this law is to foster, not to hamper, competition and it permits a monopoly in the use of a trade-mark only when it has become the absolute and exclusive property of the first user— good against the world. A merely descriptive name can never become such property [case cited]; and the utmost the first

user of such a name after it has acquired a secondary meaning can insist upon is that no one shall use it against him in an unfair way. Accordingly, the second user becomes an infringer only when he makes an unfair use of the mark. Not any competition, but only unfair competition on the part of such user is actionable. [Cases cited.]

"A technical trade-mark being treated as property, infringement thereof carries with it the presumption of fraud; but where no exclusive right to the use of a trade-mark exists, fraud—unfair competition—in the use of the mark by another must be proved [case cited]; *and when proved, the utmost that the courts can do for the relief of the first user is to enjoin not the use of the trade-mark but the unfair method of its use."* (Our emphasis.)

The complaint in the present action does not plead facts which, if proved, would establish unfair competition—fraud—on the part of the defendant and thus warrant *any* injunction, but even if it did, the injunction actually granted could not be sustained. That reads:

"It is further ordered, that the defendant, Safety Devices Corp., a Wisconsin corporation, its agents, or employees be and they hereby are restrained and enjoined from using the name 'Handi-Horse' on any product manufactured by it or them or using said name in any other manner whatever."

This absolute prohibition goes far beyond restraining only unfair methods of the use of the term.

In conclusion, sec. 268.02 (1), Stats., provides:

"When it appears from his pleading that a party is entitled to judgment and any part thereof consists in restraining some act, the commission or continuance of which during the litigation would injure him, or when during the litigation it shall appear that a party is doing or threatens or is about to do, or is procuring or suffering some act to be done in violation of the rights of another party and tending to render the judgment ineffectual, a temporary injunction may be granted to restrain such act."

It does not appear from his pleading that plaintiff is entitled to a judgment which would restrain the act of which he complains. We conclude, therefore, that the trial court erred in enjoining it *pendente lite*.

*By the Court.*—The part of the order overruling the demurrer is affirmed; the part enjoining the defendant is reversed. Cause remanded with directions to dissolve the injunction. Appellant shall have his costs in this court.