**2019 WI App 46**

# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

| | |
|---|---|
| Case No.: | 2018AP1518 |

†Petition for Review Filed

Complete Title of Case:

> TED RITTER AND CAROLYN RITTER D/B/A RITTER ENTERPRISES,
> INC.,
>
> > PLAINTIFFS-RESPONDENTS,
>
> V.
>
> TONY FARROW AND ARLYCE FARROW D/B/A FARROW ENTERPRISES,
> INC.,
>
> > †DEFENDANTS-APPELLANTS,
>
> BIBS RESORT CONDOMINIUM, INC.,
>
> > INTERVENOR-RESPONDENT.

| | |
|---|---|
| Opinion Filed: | July 30, 2019 |
| Submitted on Briefs: | |
| Oral Argument: | June 4, 2019 |

| | |
|---|---|
| JUDGES: | Stark, P.J., Hruz and Seidl, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the defendants-appellants, the cause was submitted on the briefs of *Jeanne M. Armstrong* of *Fuhrman & Dodge, S.C.*, Middleton, and *Elizabeth T. Russell* of *Law Office of Elizabeth T. Russell LLC*, Middleton.  There was oral argument by *Elizabeth T. Russell*. |

Respondent
ATTORNEYS:       On behalf of the intervenor-respondent, the cause was submitted on the brief of *John E. Danner* of *Harrold, Scrobell & Danner, S.C.*, Minocqua. There was oral argument by John E. Danner.

# COURT OF APPEALS
## DECISION
## DATED AND FILED

## July 30, 2019

Sheila T. Reiff
Clerk of Court of Appeals

### NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP1518**

Cir. Ct. No. 2010CV212

### STATE OF WISCONSIN

### IN COURT OF APPEALS

---

TED RITTER AND CAROLYN RITTER D/B/A RITTER ENTERPRISES, INC.,

    PLAINTIFFS-RESPONDENTS,

  V.

TONY FARROW AND ARLYCE FARROW D/B/A FARROW ENTERPRISES, INC.,

    DEFENDANTS-APPELLANTS,

BIBS RESORT CONDOMINIUM, INC.,

    INTERVENOR-RESPONDENT.

---

APPEAL from a judgment of the circuit court for Vilas County: MICHAEL H. BLOOM, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

¶1 SEIDL, J. This case is before us a second time. In 1986, Ted and Carolyn Ritter d/b/a Bibs Resort, Inc.[1] (the Ritters) purchased a lakefront resort property and named it "Bibs Resort." Twelve years later, they converted their resort to a condominium, using the name Bibs Resort Condominium (the Condominium). The legal name of the statutorily required association of condominium owners was Bibs Resort Condominium Inc. (the Association). In 2006, the Ritters sold to Tony and Arlyce Farrow, d/b/a Farrow Enterprises (the Farrows), the Ritters' property management business, called Bibs Resort, along with two of the thirteen units that comprised the Condominium (the 2006 transaction). A dispute ensued over the Ritters' continuing use of the name "Bibs Resort" after the transfer, and in 2012 a jury found the Ritters liable for infringing on the Farrows' trademark rights to that name.

¶2 On appeal, the Ritters argued that the circuit court erred by denying their motion to require joinder of the Association. We agreed, concluding the Association had a valid interest in claiming it had acquired independent rights to the name "Bibs Resort" prior to 2006 and that, consequently, the rights to the name could not have been transferred to the Farrows because the Association was not a party to the 2006 transaction. *See **Ritter v. Farrow**, Nos. 2012AP781 and 2013AP927, unpublished slip op. ¶37 (WI App June 24, 2014) (**Ritter I**). We therefore remanded the matter for further proceedings on the Farrows' trade name claim. **Id.**, ¶55.

---

[1] As explained below, the Ritters subsequently changed the name of their corporation to Ritter Enterprises, Inc.

¶3    On remand, the circuit court granted summary judgment in favor of the Association and the Ritters.  The court concluded, in relevant part, that:  (1) the name "Bibs Resort" "became a part" of the Association at the time of the condominium conversion; and (2) the Association's interest in the name "Bibs Resort" prevented the Farrows from acquiring exclusive ownership of the rights to the use of the name as part of the 2006 transaction.

¶4    The Farrows now appeal, arguing the circuit court erred by concluding that the Association acquired any rights to the name "Bibs Resort" as part of the condominium conversion.[2]  In support, they argue that Wisconsin's Condominium Ownership Act affects only real property.  *See* WIS. STAT. ch. 703 (2017-18).[3]   Thus, the Farrows contend the condominium conversion could not have had any effect on the Ritters' intangible personal property—i.e., their trademark rights.

¶5    We conclude the Ritters' conduct in establishing the Association and converting Bib's Resort to a condominium—taken together with both the Ritters' and the Association's subsequent actions which support Carolyn Ritter's averment

---

[2] Although both our opinion in *Ritter I* and the circuit court's subsequent grant of summary judgment explicitly addressed only the trade name "Bibs Resort," the Farrows identify three designations as being at issue on appeal in their brief-in-chief:  the trade names "Bibs" and "Bibs Resort," as well as a trade dress image, consisting of a pair of bib overalls, that the Ritters used as the resort's logo.  Regardless of this incongruity, however, the Farrows do not argue that any legal principle applies to only one particular designation, nor do they argue that any material facts exist that differentiate between the designations.  Therefore—and because trademark law "analysis is the same" regardless of whether a designation is categorized as a trade name, service mark, or trademark—we do not address this issue further.  *See Madison Reprographics, Inc. v. Cook's Reprographics, Inc.*, 203 Wis. 2d 226, 235 n.3, 552 N.W.2d 440 (Ct. App. 1996).  Our references to the name "Bibs Resort" include all three designations.

[3] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

that the Association owned the name "Bibs Resort"—manifested an implied agreement to transfer the name "Bibs Resort" to the Association. Because the Ritters did not own the name "Bibs Resort" in 2006, they could not have sold the name to the Farrows as part of the 2006 transaction. Accordingly, we affirm the circuit court's grant of summary judgment.

## BACKGROUND

¶6    From 1986 to 1998, the Ritters owned and operated Bibs Resort in St. Germain, Wisconsin. Bibs Resort consisted of: eleven cottages that the Ritters rented to the public; one house in which the Ritters lived; and a building the Ritters used as a tavern and game room.

¶7    In 1998, the Ritters converted Bibs Resort to the Condominium. The Ritters did so by first creating the Association, as required by statute,[4] and then executing a Declaration of Condominium.[5] The Condominium property consisted of: (1) thirteen units—namely, the eleven cottages, the Ritters' personal residence, and the tavern and game room described above; and (2) common elements

---

[4] WISCONSIN STAT. § 703.15(1) provides that "the affairs of every condominium shall be governed by an association," which is considered a legal entity. A condominium declarant is responsible for establishing an association prior to the date of the first conveyance of a unit. Sec. 703.15(2)(a). In this case, "every owner of a unit" was a member of the Association.

[5] A condominium declaration is the instrument by which property becomes subject to the Condominium Ownership Act. *See* WIS. STAT. §§ 703.02(8), 703.01.

comprised of "the land and all other parts of the condominium not within the perimeters of the individual units."[6]

¶8      At the time of the condominium conversion, the Ritters owned all thirteen condominium units and, therefore, were the sole members of the Association.  Immediately after the conversion, the Ritters continued to rent all eleven cottage units to the public under the name "Bibs Resort."  They subsequently sold four of the cottage units between 1998 and 2005.  The new owners of these four units became members of the Association upon their purchase, and they were permitted to place the Bibs Resort logo on their respective unit doors.  The Ritters, through a subchapter S corporation called Bibs Resort, Inc., "continued to rent the [sold] unit[s] under a management agreement with [each] new owner," referring to the rental properties as being part of "Bibs Resort."

¶9      In 2006, the Ritters agreed to sell certain property to the Farrows. More specifically, as set forth in a statement signed by the Ritters in January 2006:

> Ted Ritter and Carolyn Ritter, sole owners and stockholders of [Bibs] Resort, Inc., a subchapter S corporation licensed in the state of Wisconsin, do hereby authorize the sale of [Bibs] Resort Inc. property management, its management contracts, listed inventory, unit 12 with the laundry building, unit 13 [the tavern], and the garage storage units 27-29.

---

[6] Condominium property is defined as "unimproved land, land together with improvements on it or improvements without the underlying land."  WIS. STAT. § 703.02(14). "The condominium property is made up of two legal components: 'units' and 'common elements.'"  *Saddle Ridge Corp. v. Board of Review for Town of Pac.*, 2010 WI 47, ¶9, 325 Wis. 2d 29, 784 N.W.2d 527.

In the parties' offer to purchase, they specified that the sale included "all tangible and intangible personal property and rights in personal property owned by seller." According to Carolyn Ritter's affidavit, prior to the sale being completed:

> The Farrows knew we had rental management agreements in place with all the condominium unit owners. They knew any agreement could be terminated by either party upon ninety (90) days advance notice. We discussed these rental management agreements with them, their attorney, and the real estate brokers. Everyone understood the rental management agreements could not be sold, assigned, or transferred. The Farrows' attorney insisted new rental management agreements be prepared and signed. Our attorney prepared new rental management agreements which were signed by the Farrows and all condominium unit owners, including ourselves. The new rental management agreements contained an identical ninety (90) day termination clause, enabling either party to terminate the agreement at any time, provided the required ninety (90) day advance notice was given.
>
> We and our attorney also discussed with the Farrows and their attorney the provision of maintenance, repair, landscaping, and groundwork services to the Unit Owners Association. It was understood by all parties that those services were subject to contractual approval by the Board of Directors for [the Association]. The assumption of the right to provide these services by the Farrows was subject to approval by the Board of Directors, who also was responsible for the renewal or extension of any contract for such services. My husband and I never signed any document that conveyed or assigned to the Farrows the right to provide contract maintenance, repair, landscaping, and groundwork services to [the Association].

¶10   After the 2006 transaction was completed, the Ritters and the Farrows jointly reported the transfer of the Ritters' "management of vacation resort" business to Wisconsin's Division of Unemployment Insurance on a "Report of Business Transfer" form. That form listed the assets transferred in the sale, including the Ritters' "goodwill" in their business. Moreover, a box was checked stating that the sale constituted "a total transfer" of the Ritters' business.

¶11 The Ritters and the Farrows also submitted a request to the Wisconsin Department of Revenue (DOR) regarding a "[c]hange in business name." In their joint correspondence, they stated that Bibs Resort, Inc., still owned "business property (some rental cottages) at the resort" and "wish[ed] to maintain the businesses' corporate status but change the current name of Bibs Resort, Inc. to Ritter Enterprises, Inc." Further, they wrote that the Farrows "*would like to use* the name Bibs Resort as a trade name since they are handling advertising, reservations and payments under that name. Ted and Carolyn Ritter are *amenable to that change*."[7] (Emphases added.)

¶12 By February 2008, the relationship between the Ritters and Farrows had deteriorated, and the Ritters cancelled the Farrows' rental agreement for the Ritters' seven cottage units. In addition, the four remaining cottage unit owners terminated their rental management agreements with the Farrows. The Ritters then resumed renting their seven units themselves, using the name "Bibs Cottages."

¶13 In 2010, the Ritters filed a lawsuit against the Farrows in small claims court, asserting various claims not relevant to this appeal. The Farrows counterclaimed, asserting multiple causes of action, including trademark infringement for the Ritters' continued use of the name "Bibs Resort." Ultimately,

---

[7] We note that there is no evidence in the appellate record that the Association either joined in the Report of Business Transfer or in the request to the DOR, nor is there any evidence the Association consented to an ownership transfer of the name "Bibs Resort" to the Farrows. We also note that neither the Report of Business Transfer nor the request to the DOR specifically stated that ownership of the name "Bibs Resort" was being transferred to the Farrows.

the Ritters' claims were dismissed, leaving only the Farrows' counterclaims remaining in the case.

¶14    One month before the scheduled jury trial, the Association filed a motion to intervene. As grounds, the Association "claim[ed] an interest relating to the name 'Bibs Resort Condominium.'" The circuit court denied this motion, and a jury ultimately found that the Ritters had infringed upon the Farrows' trade name, "Bibs Resort."

¶15    On appeal, we reversed the circuit court's denial of the Association's motion to intervene in *Ritter I*. We reasoned, in relevant part, that:

> The Association concedes it shares a "similar desired outcome" with Ritters—that is, "that there not be a finding that ... Farrows['] use of the name 'Bibs Resort' constitutes a trade name." Despite this concession, we reject Farrows' argument that the Association, the individual owners, and Ritters have the same "ultimate objective." The trade name dispute between Farrows and Ritters was inextricably linked with their contract dispute. Farrows alleged Ritters sold them the exclusive right to use the trade name "Bibs Resort" and then reneged on that agreement. The Association and the other owners were not parties to the contract between Ritters and Farrows. They have independent rights to the name "Bibs Resort," and they claim they never agreed Farrows could be sold the exclusive right to use that name. Thus, while Ritters' main concern in this litigation is to show they *did not* sell Farrows the exclusive right to use the name "Bibs Resort," the Association and other owners have an interest in showing Ritters *could not* sell Farrows that right. Consequently, although Ritters, the Association, and the other owners have some similar goals in this litigation, their ultimate objectives are not identical.

*Ritter I*, Nos. 2012AP781 and 2013AP927 ¶37. We therefore remanded the case for further proceedings on the Farrows' trade name claim. *Id.*, ¶55.

¶16    On remand, the Association and the Farrows filed cross-motions for summary judgment.    In support of its motion, the Association argued that: (1) Bibs Resort is not a trade name; and (2) even if it were, the Association's "prior and continued use of the trade name and logo bars Defendant Farrow from the exclusive use of the trade name."

¶17    For their part, the Farrows argued that: (1) Bibs Resort is a trade name because it is inherently distinctive and it identifies and distinguishes a business; (2) it is a fundamental tenet of trademark law that there can be only one owner of a trademark; (3) the Ritters were the original owners of the name Bibs Resort and they "did not assign [their trademark] rights to the Association" at any time prior to the 2006 sale to the Farrows; and (4) the Ritters necessarily transferred the name "Bibs Resort" to the Farrows as part of the 2006 transaction by including their business' goodwill in that sale.

¶18    Following a hearing, the circuit court granted the Association's summary judgment motion in a written order.  The court determined, in relevant part, that: (1) "Bibs Resort" was a trade name entitled to trademark protection; (2) the name "Bibs Resort" "became part of" the Association at the time of the 1998 condominium conversion; and (3) the "[p]rinciples applicable to collective trademarks compel[led] the conclusion that each individual owner of a condominium unit belonging to [the Association] holds rights in and to [the name] 'Bibs Resort'; thus, there is no exclusivity of ownership, and, therefore, [the Farrows] cannot prevail on their trademark or [trade name] claims."  In addition, the court noted that although there were "disputed issues of fact as to whether goodwill or the trade name "Bibs Resort" or both were transferred to [the Farrows] as part of the 2006 transaction," that dispute was immaterial because the Ritters

9

did not have exclusive ownership of the trade name in 2006. The Farrows now appeal.[8]

## DISCUSSION

¶19    We review a grant of summary judgment de novo. *Tews v. NHI, LLC*, 2010 WI 137, ¶40, 330 Wis. 2d 389, 793 N.W.2d 860. The summary judgment methodology is well established. *Id.*, ¶41. Summary judgment must be granted when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2). "The purpose of the summary judgment procedure is to avoid trials when there is nothing to try." *Tews*, 330 Wis. 2d 389, ¶42.

¶20    As discussed below, the dispositive issue in this appeal is whether the actions taken by the Ritters and the Association—both at the time of and after the 1998 condominium conversion—represented conduct manifesting an implied agreement to transfer the name "Bibs Resort" to the Association. The Farrows do not argue that there are any material facts in dispute. Rather, they argue the circuit court's conclusion that the conversion affected the Ritters' trademark rights was

---

[8] We note that the Farrows also asserted, for the first time on remand, a federal trademark infringement claim. The Association objected, arguing that a "federal trademark infringement claim was not pled in [the Farrows'] counterclaim nor was the issue raised during the first trial." The circuit court ultimately declined to reach this issue, determining that its grant of summary judgment rendered any potential federal claims moot.

At oral argument, the Farrows did not argue that this case presented any exception to the general rule that "[i]n almost all situations, state [trademark] law is essentially the same as federal [trademark] law." 3 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 22:1 (5th ed. 2019). Consequently, resolving whether the Farrows were entitled to assert their federal trademark claims would have no bearing on our analysis of the issues raised on appeal. Thus, we decline to address the issue further. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (an appellate court need only address dispositive issues).

"incorrect as a matter of law." In support, they point to the statutory definition of condominium property, *see* WIS. STAT. § 703.02(14), as well as to general principles of trademark law. We decide questions of statutory interpretation de novo. *Madison Reprographics, Inc. v. Cook's Reprographics, Inc.*, 203 Wis. 2d 226, 246, 552 N.W.2d 440 (Ct. App. 1996). Likewise, we independently apply relevant principles of trademark law to undisputed facts. *Id.* at 238.

¶21 We begin by setting forth certain principles of Wisconsin and federal trademark law.[9] A trademark is a form of intangible property. *See Adams Outdoor Advert., Ltd. v. City of Madison*, 2006 WI 104, ¶62, 294 Wis. 2d 441, 717 N.W.2d 803. Even so, it is an unusual form of property:

> [Although] a trademark can be categorized as a kind of "property" right, such a characterization often creates more confusion than clarity. This is because the "property" parameters of a trademark are defined very differently from any other kind of "property." In almost all cases, the exclusive "property" right of a trademark is defined by customer perception.

1 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 2:10 (5th ed. 2019) ("MCCARTHY ON TRADEMARKS"); *see also TMT N. Am., Inc. v. Magic Touch GmbH*, 124 F.3d 876, 882 (7th Cir. 1997) ("Strictly speaking, however, trademarks are not ordinary property interests.").

---

[9] Although Wisconsin has long recognized a common-law cause of action for trademark infringement, *see, e.g.*, *Listman Mill Co. v. William Listman Milling Co.*, 88 Wis. 334, 60 N.W. 261 (1894), we have also recognized that our case law addressing trademarks is relatively "undeveloped." *Koepsell's Olde Popcorn Wagons, Inc. v. Koepsell's Festival Popcorn Wagons, Ltd.*, 2004 WI App 129, ¶34, 275 Wis. 2d 397, 685 N.W.2d 853. Accordingly, we "look to federal law for guidance" when necessary to resolve a trademark dispute. *Id.*

Still, unique parameters aside, trademark rights may be transferred amongst parties, like any other kind of property. MCCARTHY ON TRADEMARKS § 18:1.

¶22 One means by which parties may do so is via an "implied agreement to transfer ownership." *TMT N. Am.*, 124 F.3d at 884. To be valid, such an implied agreement "requires conduct manifesting agreement." *Id.* Like any other transfer of trademark rights, an implied agreement to transfer ownership must be accompanied by the goodwill that the transferred trademark represents. *See id.* at 882. This requirement—known as the anti-assignment-in-gross rule—reflects that a trademark "is merely a symbol of goodwill and has no significance apart from its goodwill." *Koepsell's Olde Popcorn Wagons, Inc. v. Koepsell's Festival Popcorn Wagons, Ltd.*, 2004 WI App 129, ¶36, 275 Wis. 2d 397, 685 N.W.2d 853 (citation omitted).

¶23 To further explain, goodwill is a representation of the "qualities that attract customers to [a] business." *Newark Morning Ledger Co. v. United States*, 507 U.S. 546, 556 (1993). As such, trademark rights cannot "exist independent of the business goodwill to which they are appurtenant." *Berni v. International Gourmet Rests. of Am., Inc.*, 838 F.2d 642, 646 (2d Cir. 1988) This inseparability is essential to trademark law because if the party purporting to own a trademark no longer controls the goodwill the trademark represents—i.e., the qualities that attract customers to a business—the trademark no longer serves as an identifier of a "particular source" of a good, service, business or enterprise. *Madison Reprographics*, 203 Wis. 2d at 235. In other words, "trademarks are … protected only to the extent that they give consumers information about the origin or quality of products." *TMT N. Am.*, 124 F.3d at 882.

12

¶24    With these principles in mind, we turn to the circuit court's conclusion that the trademark rights were transferred from the Ritters to the Association at the time of the 1998 condominium conversion.  We ultimately agree with the court's determination, albeit for a different reason than relied on by the court.  *See **Bence v. Spinato***, 196 Wis. 2d 398, 417, 538 N.W.2d 614 (Ct. App. 1995) (stating we may affirm a grant of summary judgment based on a theory or reasoning different from that relied upon by the circuit court).  Namely, we conclude, for the following reasons, that the Ritters' and the Association's conduct manifested an implied agreement to transfer the name "Bibs Resort" to the Association.

¶25    First, by converting their resort to a condominium, the Ritters necessarily transferred control of their property—including control of its marketing, advertising, and general renting authority—to the Association.  This transfer is mandated by the Condominium Ownership Act:  "The affairs of every condominium shall be governed by an association" of unit owners.  WIS. STAT. § 703.15.  To that end, our supreme court has recognized the formidable authority statutorily vested in condominium owners' associations, and how that power extends to the Association's ability to regulate unit owners' rental of their properties. *See **Apple Valley Gardens Ass'n, Inc. v. MacHutta***, 2009 WI 28, ¶17, 316 Wis. 2d 85, 763 N.W.2d 126.

¶26    For example, in ***Apple Valley***, two condominium unit owners objected to the ability of a condominium owners' association to prohibit rental of their condominium units. ***Id.***, ¶2.  The ***Apple Valley*** court rejected their claim, stating:

> We recognize that … condominium associations [are empowered] to take actions that limit the rights of

13

> individual owners. There is an inherent tension between the competing interests of supermajority owners[10] and individual owners. A unit owner might be frustrated, financially or otherwise, by the loss of her ability to rent out her unit. But the statutes are clear that associations have this power.

*Id.*, ¶17. (footnote omitted.)

¶27 To be sure, the Ritters had the ability to unilaterally make the Association's decisions until the 2006 transaction. But this authority derived from their position as supermajority owners,[11] not their status as former resort owners. Consequently, it was the Association that permitted individual unit owners to take such actions as advertising their property to rent under the Bibs Resort designation and displaying the Bibs Resort logo on their units after the condominium conversion.

¶28 Second, Carolyn Ritter averred that she and her husband did not sell the trademark rights at issue to the Farrows in 2006 because the "name and logo [of Bibs Resort] was and is the property of the [Association]." In considering this averment, we recognize the danger of allowing parties to "us[e] self-serving testimony to gain ownership of trademarks." *TMT N. Am.*, 124 F.3d at 884. However, and important for summary judgment purposes, here the Farrows point to no evidence in the record on appeal that contradicts Carolyn's statement that the

---

[10] Under WIS. STAT. § 703.10(5), a sixty-seven percent supermajority of owners may amend a condominium's bylaws.

[11] Prior to the 2006 transaction, which included the sale of two units to the Farrows, the Ritters owned nine of thirteen units. This represents a sixty-nine percent ownership share, thus making the Ritters supermajority owners.

Association owned the name Bibs Resort prior to the 2006 transaction. Indeed, our review of the record on appeal lends support to Carolyn's statement.

¶29 For instance, the 2006 offer to purchase between the Ritters and the Farrows stated that the Ritters intended to sell "all tangible and intangible personal property and rights in personal property owned by seller." Yet the Ritters and the Farrows subsequently submitted a joint correspondence to the DOR stating that the Ritters would be "amenable" to the Farrows' "use" of the name. That correspondence did not specifically state that ownership of the name Bibs Resort was being transferred to the Farrows, but only that the Farrows were given permissive "use" of the name in their "handling advertising, reservations, and payments" for Bibs Resort.

¶30 We conclude the foregoing supports Carolyn Ritter's averment because, again, the parties stated that the 2006 transaction included a "total transfer" of all the Ritters' property, including intangible property, that was "owned by the seller." Therefore, if Carolyn (and the Farrows for that matter) considered the Ritters to have owned the name "Bibs Resort," there would have been no need for the Ritters to acquiesce to the Farrows' use of the trade name Bibs Resort. In other words, although the Report of Business Transfer noted the 2006 transaction constituted a transfer of the Ritters' goodwill, the parties' conduct indicated they did not understand that goodwill to be tied to the name Bibs Resort. Rather, it would be tied to the management and related services then provided to the Association.

¶31 Third, the Ritters' decision to name the Association "Bibs Resort Condominium" is consistent with an intent to transfer the goodwill associated with the name Bibs Resort—and therefore the trademark rights—to the Association at

the time of the condominium conversion. *See Berni*, 838 F.2d at 646. As explained, a trademark and its goodwill are inseparable. And the purpose of a transfer of goodwill is straightforward: "Goodwill enables a purchaser to step into the shoes of the seller." *Baker v. Commissioner of Internal Revenue*, 338 F.3d 789, 793 (7th Cir. 2003). In that sense, the Ritters' decisions to name the Condominium "Bibs Resort Condominium" and the Association "Bibs Resort Condominium, Inc." was significant because it allowed the Association to market the Condominium using the goodwill the Ritters ingrained in the name Bibs Resort from 1986 to 1998. Stated differently, the Ritters' decision to give the Condominium and the Association the same name as their resort allowed the Association to step into the Ritters' shoes as former operators of the resort.

¶32      At oral argument, the Farrows contended that the Ritters' decision to name the Condominium "Bibs Resort" was indicative of "sloppiness" on the Ritters' part because it showed poor management of their trademark rights. The Farrows reasoned that if the Ritters had simply named their condominium "XYZ Condominium" there would have been no subsequent dispute regarding ownership of the name "Bibs Resort."

¶33      We disagree with the Farrows' characterization of the Ritters' decision because it fails to recognize that if the Ritters had chosen another name for the Condominium, then the name "Bibs Resort" would have ceased to be entitled to trademark protection. This conclusion follows because, again, a trademark and its goodwill are inseparable. MCCARTHY ON TRADEMARKS § 2:16. Put simply, if the name "Bibs Resort" was separated from the very resort property it had come to represent from 1986 to 1998, then the name would no longer serve its purpose to identify and distinguish the resort property for potential renters. *See id.*, § 16:1 ("In the absence of customer recognition of the symbol, the 'owner' of

the business has no good will, and thus there is nothing for the 'trademark' or 'trade dress' to symbolize or represent."). In any event, the Farrows' argument in this regard ignores the fact that the Association allowed individual unit owners to market the Condominium using the goodwill associated with the name "Bibs Resort."

¶34 In a related argument, the Farrows also contended at oral argument that concluding the Ritters transferred the trademark rights to the Association would frustrate the most important principle of trademark law: singularity of source. *See id.*, § 16:4. This argument hinges on the Farrows' assertion that they acquired the exclusive right to provide the services represented by the name "Bibs Resort"—specifically, "property management services, maintenance services, boat rental services, and bar and restaurant services"—as part of the 2006 transaction.

¶35 We are not persuaded that concluding the Ritters transferred the name "Bibs Resort" to the Association would cause confusion as to singularity of source, for two reasons. First, our supreme court has recognized that, in the context of resort properties, the "product" that attracts prospective renters is not the type of fungible services identified by the Farrows:

> A competent level of management can be expected to reproduce the predicted income stream from the condominiums. Most entrepreneurs willing to participate in the competitive resort market are likely to possess the requisite business savvy and skills to provide clean linens, switchboard services, and help with reservations and check-in and check-out.

*ABKA Ltd. P'ship v. Board of Review of Vill. of Fontana-On-Geneva Lake*, 231 Wis. 2d 328, 342, 603 N.W.2d 217 (1999). Instead, it is the "*unique quality of the land itself* that attracts prospective condominium renters." *Id.* (emphasis added).

17

¶36    Second, even assuming that the name "Bibs Resort" represents the services the Farrows identify, the record belies the Farrows' assertion that they acquired the exclusive right to provide all of the services they identify—specifically, property management and maintenance services—as part of the 2006 transaction.  To the contrary, the appellate record shows that although the Farrows purchased the Ritters' management contracts with the individual unit owners, those contracts included "termination clause[s], enabling either party to terminate the agreement at any time."  Indeed, within two years of the Farrows' purchase of these management contracts, every member of the Association—with the exception of the Farrows themselves—had exercised their right to cancel these contracts.

¶37    Likewise, the record establishes that the Ritters could not have sold an exclusive right to provide maintenance services on the property because the 1998 condominium declaration gave that right to the Association.  Specifically, the declaration states that the Association had the right to "enter into contracts with any firm, person or corporation for the maintenance and repair of the condominium common properties."  This right again derived from the statutory mandate that the "affairs of every condominium shall be governed by an [owners'] association."  WIS. STAT. § 703.15; *see also* **Solowicz v. Forward Geneva Nat'l, LLC**, 2010 WI 20, ¶5, 323 Wis. 2d 556, 780 N.W.2d 111.  There is no record evidence that the Association itself ever transferred an exclusive right to provide maintenance services to the Farrows.

¶38    In summary, we conclude that in 1998 the Ritters impliedly transferred the name "Bibs Resort" to the Association when they converted their resort to a condominium.  This conclusion is compelled by: (1) the statutorily mandated transfer of control over the Condominium's affairs, including unit

owners' ability to rent their units to the public, as part of the 1998 condominium conversion; (2) Carolyn Ritter's averment that the Association owned the name "Bibs Resort," in conjunction with the strong evidence supporting that statement; and (3) the inseparability of a trademark and the goodwill it represents. Consequently, in 2006 the Ritters could not have transferred—and did not transfer—ownership of the name "Bibs Resort" to the Farrows. Accordingly, the circuit court properly granted the Association and the Ritters summary judgment on the Farrows' trademark claims.[12]

> *By the Court.*—Judgment affirmed.

---

[12] The Farrows raise an additional argument that the circuit court erred by concluding that the "[p]rinciples applicable to collective trademarks compel the conclusion that each individual owner of a condominium unit belonging to [the Association] holds rights in and to" the name "Bibs Resort." We need not address this argument, given our conclusion that the Ritters impliedly assigned their trademark rights to the Association in 1998. *See Miesen v. DOT*, 226 Wis. 2d 298, 309, 594 N.W.2d 821 (Ct. App. 1999) (stating the court of appeals "should decide cases on the narrowest possible grounds"). As we explained in *Ritter I*, the Farrows could not have acquired the trademark rights to the name "Bibs Resort" as part of the 2006 transaction unless the Ritters were the exclusive owners of those rights at that time.

Nonetheless, we note that the circuit court's conclusion does not accurately reflect the law of collective marks. Namely, the general rule regarding collective marks is that:

> Collective trademarks and service marks are marks used by members of an organization to identify and distinguish their goods or services. All members of the collective group use the mark and the collective, not any one of its members, is the owner of the collective mark for the benefit of the members.

MCCARTHY ON TRADEMARKS § 19:99. Thus, the "principles applicable to collective trademarks" compel the conclusion that it is the Association, not the individual unit owners, that is the owner of the name "Bibs Resort."